IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MAURICE MOORE, | CASE NO. 4:20-CV-01786-DAR |
| Petitioner, | JUDGE DAVID A. RUIZ |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| SHELDON EDWARDS, Warden, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

On August 12, 2020, Petitioner Maurice Moore, while a prisoner in state custody, filed a *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1).[1] On November 16, 2020, Respondent Sheldon Edwards, in his official capacity as Warden of the Mansfield Correctional Institution (hereinafter, the State), filed an Answer and Return of Writ. (ECF #9). Mr. Moore filed a Traverse (ECF #13) and the State filed a Reply to the Traverse (ECF #14).

The District Court has jurisdiction over the petition under § 2254(a). On August 14, 2020, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge for preparation of

---

[1]    The Antiterrorism and Effective Death Penalty Act (AEDPA) authorizes habeas corpus relief only for a petitioner who is "in custody" in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The Supreme Court interprets this language to mean the habeas petitioner must be in custody when the petition is filed. *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). Mr. Moore was released from state prison in October 2022 but is serving three years of post-release control under the supervision of the Ohio Adult Parole Authority. *See* Ohio Department of Rehabilitation and Correction, http://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A671106 (last accessed July 7, 2023). This type of supervision is a form of custody for purposes of seeking habeas corpus relief. *Jones v. Cunningham*, 371 U.S. 236 (1963).

a Report and Recommendation. (Non-document entry of Aug. 14, 2020). On May 20, 2021, the

matter was reassigned to me pursuant to General Order 2021-06. (Non-document entry of May 20,

2021). On February 22, 2022, the matter was reassigned to a new district judge. (Non-document

entry of Feb. 22, 2022).

For the reasons discussed below, I recommend the District Court **DISMISS** the petition in

its entirety. If any of the grounds for relief are considered on their merits, I recommend the

District Court **DENY** habeas relief. I further recommend the District Court **DENY** a certificate of

appealability for all grounds for relief. Finally, I recommend the District Court **DENY** Mr.

Moore's request for a hearing because all grounds for relief can be adjudicated based on the State

Court Record.

## Procedural History

### A.    Factual Findings of the Court of Appeals

The Eleventh District Court of Appeals, Trumbull County, Ohio, set forth the facts of this

case on direct appeal. These factual findings "shall be presumed to be correct" and Mr. Moore has

the burden of rebutting this presumption of correctness by clear and convincing evidence. 28

U.S.C. § 2254(e)(1). The Eleventh District determined:

> [¶ 2] On June 21, 2012, the home of appellant's ex-girlfriend, Pam Valentino, was
> broken into. Ms. Valentino was not home during the break-in. To gain access into
> the home, a front window was broken and the door was kicked in, which shattered
> the door frame.
>
> [¶ 3] When Ms. Valentino arrived home, she noticed her television was missing and
> the window next to the door was broken. As she looked around her house, she
> noticed other things missing, along with droplets of blood all through her home. Ms.
> Valentino called the police.
>
> [¶ 4] Ms. Valentino was visibly upset when police arrived. The police created a report
> of the incident. Various items were stolen from Ms. Valentino's home, including a

Magnavox television, a Blu-ray player, DVDs, a stereo, a camera, a laptop, a leather jacket, and a police scanner. The assailant left a trail of blood throughout the house. Police took two samples of blood from the home, one from the floor and the other from the doorknob. The blood samples were secured, sealed, initialed, and logged as evidence. The blood samples were sent to the Bureau of Criminal Investigation ("BCI"), where the samples were run through the Combined DNA Index System ("CODIS") for comparison.

[¶ 5] Police received notification from BCI that CODIS revealed a preliminary match between the DNA in the blood samples sent from Ms. Valentino's home and appellant's DNA. In addition, the preliminary match was corroborated through thumbprint comparisons.

[¶ 6] Based on the letter from BCI, police obtained a search warrant for appellant's DNA. In executing the warrant, police collected buccal swabs from the inside of each of appellant's cheeks. Those swabs were sent to BCI, which confirmed the preliminary results.

[¶ 7] Appellant was indicted by the grand jury in the Trumbull County Court of Common Pleas on one count of Burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(2) and (D). Appellant entered a plea of not guilty.

*State v. Moore*, No. 2015-T-0072, 2017 WL 3226468, at *1 (Ohio Ct. App. Jul. 31, 2017), *appeal not allowed*, 91 N.E.3d 758 (Ohio 2018) (table).

**B.     State Court Conviction**

On November 26, 2013, a Trumbull County Grand Jury indicted Mr. Moore on one count of burglary, a second-degree felony, in violation of Ohio Rev. Code § 2911.21(A)(1), for events occurring on June 21, 2013. (State Court Record, ECF #9-1, PageID 167-68). The State later amended the indictment to reflect the proper offense date of June 21, 2012. (*Id.* at PageID 208-09). On December 12, 2013, Mr. Moore pled not guilty. (*Id.* at PageID 169).

On December 16, 2013, Mr. Moore, *pro se,* filed a motion of discovery and bill of particulars and a motion for indigent person. (*Id.* at PageID 170-71). On December 19, Mr. Moore filed a motion to object to the taking of his DNA and, at a pretrial hearing, advised the trial court

of his desire to represent himself. (*Id.* at PageID 174; *see also* State Court Record, ECF #9-2, PageID 1166). The court strongly encouraged Mr. Moore to speak with an attorney about his case. (ECF #9-2 at PageID 1168).

On January 9, 2014, Mr. Moore informed the court of his continued intention to represent himself. (*Id.* at PageID 1171). On January 23, after a lengthy inquiry from the trial court, (*Id.* at PageID 1173-91), Mr. Moore waived his right to trial counsel and the court appointed stand-by counsel. (ECF #9-1 at PageID 177; ECF #9-2 at PageID 1194). Mr. Moore also signed a waiver of his right to a speedy trial. (ECF #9-1 at PageID 176).

Thereafter, Mr. Moore filed several *pro se* motions, including a motion to suppress, a request to allow evidence, a motion to request all discovery, a motion to dismiss for speedy trial violation, a motion to objection and motion to dismiss, and a motion to allow expert witness and for payment for expert witness. (ECF #9-1 at PageID 178-79, 181-84, 186-88, 194-96, 201-04, 206). The trial court denied all motions. (ECF #9-1 at PageID 172-73, 175, 180, 185, 193, 197, 205, 207).

The case proceeded to jury trial on June 1, 2015. (ECF #9-2 at PageID 1274). On June 2, the jury returned a verdict of guilty on one count of burglary, in violation of Ohio Rev. Code § 2911.12(A)(2) and (D). (ECF #9-1 at PageID 210). On June 10, 2015, the trial court sentenced Mr. Moore to eight years in prison "to be served consecutively to any other sentences imposed upon the Defendant by any other Court." (*Id.* at PageID 211-14). At sentencing, Mr. Moore asked

the trial court to file his Notice of Appeal and declined the court's offer to appoint appellate

counsel. (*Id.* at PageID 213; *see also* ECF #9-2 at PageID 1513).

**C.    Direct Appeal**

Mr. Moore, acting *pro se*, appealed to the Eleventh District, raising the following

assignments of error:

> **Assignment of Error No. 1**. The trial court erred by failing to inform the Appellant of the nature of the charges against him, the statutory offenses involved, the possible defenses to the charge, or any other facts essential to a broad understanding of the matter before accepting the Appellant's Crim. R. 44(C) waiver of counsel and allowing him to proceed to trial.

> **Assignment of Error No. 2**. The trial court failed to protect the Appellant's right to compulsory process under the Sixth Amendment of the United States Constitution and Article 1 of the Ohio Constitution, by refusing to enforce his subpoena to obtain witnesses with evidence and testimony critical to his defense.

> **Assignment of Error No. 3**. The trial court erred by failing to protect the Appellant's right to prepare a proper defense under the Fifth Amendment of the United States Constitution and Section 16 Article 1 of the Ohio Constitution, by failing to approve his request for an expert to testify and rebut the State's DNA evidence and expert witness.

> **Assignment of Error No. 4**. The trial court erred when it failed to properly rule on the Appellant's pre-trial motions prior to trial, without a proper hearing for some.

> **Assignment of Error No. 5**. The State violated the appellant's right to due process by suppressing favorable evidence for the Appellant that was material to his guilty, after he made numerous requests for discovery.

(ECF #9-1 at PageID 272-321) (citations omitted) (cleaned up). The State moved to strike Mr.

Moore's brief and to dismiss the appeal. (*Id.* at PageID 353-55). The Eleventh District denied the

State's motion and the State filed its responsive brief. (*Id.* at PageID 358-59, 371-96).

Thereafter, Mr. Moore filed a writ of mandamus, and amendments thereto, requesting the

appointment of appellate counsel. (*Id.* at Page 397-98, 401). The Eleventh District granted these

motions "to the extent that counsel will be appointed to represent appellant for purposes of appeal; otherwise both pleadings are improperly filed as part of this appeal." (*Id.* at PageID 407). The Eleventh District granted appellate counsel leave to file a supplemental brief to Mr. Moore's *pro se* brief. (*Id.* at PageID 408).

On July 11, 2016, Mr. Moore, through counsel, filed a supplemental brief identifying three additional assignments of error:

> **Supplemental Assignment of Error No. 1.** The trial court erred when it ordered consecutive sentences under R.C. 2929.14 without making all of the required findings on the record and without incorporate [*sic*] those findings into the court's sentencing entry.
>
> **Supplemental Assignment of Error No. 2.** Appellant's rights against self-incrimination were violated when the trial court imposed a harsher sentence after it found that Appellant had no remorse.
>
> **Supplemental Assignment of Error No. 3.** The trial costs imposed at the sentencing hearing infringes upon Appellant's rights under the Eighth and Fourteenth Amendments to the United States Constitution, R.C. 2929.18, R.C. 2919(B)(5), R.C. 2947.14, and related sections of the Ohio Constitution.

(*Id.* at PageID 409-22). On August 1, 2016, the State filed its Appellee's Brief. (*Id.* at PageID 424-39).

After a hearing on November 8, 2016, the Eleventh District ordered post-hearing supplemental briefing limited to "whether it was error for the trial court to make appellant's sentence consecutive to 'any other sentences imposed upon the Defendant by any other court.'" (*Id.* at PageID 440). In his post-hearing supplemental brief, Mr. Moore identified this issue as another supplemental assignment of error. (*Id.* at PageID 442).

On July 31, 2017, the Eleventh District affirmed in part and reversed in part the trial court's judgment and remanded the matter for the trial court "to consider the imposition of

6

concurrent or consecutive sentences based on the sentence or sentences appellant was serving at the time sentence was imposed in this case." (*Id.* at PageID 479; *see also Moore*, 2017 WL 3226468, at *11).

On either November 16 or December 27, 2017, Mr. Moore filed a notice of appeal and a motion for leave to file a delayed appeal with the Supreme Court of Ohio. (*Id.* at PageID 481-84, 509-511).[2] The Supreme Court of Ohio denied Mr. Moore's motion for leave and dismissed the appeal. (*Id.* at PageID 517).

**D.      Application to Reopen the Direct Appeal**

On June 28, 2017, while his direct appeal was pending before the Eleventh District, Mr. Moore filed an application to reopen his direct appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure. (ECF #9-1 at PageID 518-19). On July 27, 2017, the Eleventh District denied the application as premature because his claims on direct appeal remained pending before it. (*Id.* at PageID 530).

On August 14, 2017, after the Eleventh District affirmed in part and reversed in part on direct appeal, Mr. Moore, *pro se,* sought reconsideration of the denial of his application to reopen the direct appeal and claimed ineffective assistance of appellate counsel for not raising issues of ineffective assistance of stand-by counsel and violations of speedy trial rights. (*Id.* at PageID 532-50). The Eleventh District construed the reconsideration motion as an application for reopening pursuant to Rule 26(B) and denied it. (*Id.* at PageID 571-73).

---

[2]      Date stamps reflect the Supreme Court of Ohio received the documents on November 16 and December 27, 2017, and were docketed on December 27, 2017.

On October 30, 2017, Mr. Moore filed a notice of appeal and memorandum in support of jurisdiction to the Supreme Court of Ohio setting forth the following propositions of law:

> **Proposition of Law No. 1.** Effective assistance of counsel on his first appeal, Pursuant 6th and 14th.
>
> **Proposition of Law No. 2.** A court is bound by the Criminal Rule 48(A)(B)(C) and in which a preliminary hearing is held pursuant to Criminal Rule (5)(B)(1) also Speedy Rights Violation pursuant to R.C. 2945.71 or 2945.72 Delay in trial for dismissal.
>
> **Proposition of Law No. 3.** Judge bound not to infringe on defendant rights to standby counsel and equal protection of the law pursuant to 4th and 5th 6th 11th 14th Amendments under Section 10 Article I of the Ohio Constitution.
>
> **Proposition of Law No. 4**. Ineffective of standby counsel pursuant to Civil Justice Act, and American Bar Association and 6th and 14th Amendment US Constitution See also Article I Ohio-Constitution.
>
> **Proposition of Law No. 5**. Subject-Matter Jurisdiction when one State to deprivation of any rights privileges or immunities secured or protected by the Constitution or Law the United State Pursuant to Section 242 2 of Civil Rights Act see also Section 42 USC 1985 Official from granting equal Protection of the – Law.

(*Id.* at PageID 574-90) (cleaned up). The Supreme Court of Ohio declined jurisdiction on February 14, 2018. (*Id.* at PageID 609; *see also State v. Moore*, 91 N.E.3d 758 (Ohio 2018) (table)).

**E.      Resentencing in 2017**

Meanwhile, on October 12, 2017, the trial court issued a *nunc pro tunc* entry resentencing Mr. Moore to eight years in prison to be served consecutively to the sentence imposed in Summit County Common Pleas Court Case No. 2013-07-1818. (ECF #9-1 at PageID 610-14). On October 24, 2017, Mr. Moore filed a *pro se* motion objecting to the *nunc pro tunc* entry. (*Id.* at PageID 615-16). The trial court did not rule on this motion.

On November 7, 2017, Mr. Moore, *pro se*, filed a notice of appeal to Eleventh District. (*Id.* at PageID 617). In his brief, Mr. Moore raised the following assignments of error:

8

> **Assignment of Error 1**. The trial court erred by resentencing Moore while he was not present in court in violation of Crim. R. 43(A) and the Due Process clause to the Fourteenth Amendment to the United States Constitution.
>
> **Assignment of Error 2**. The trial court completely deprived Moore of effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution, when the court resentenced Moore without counsel being present.

(*Id.* at PageID 628) (cleaned up). On May 7, 2018, the Eleventh District determined the trial court's *nunc pro tunc* entry was not the appropriate remedy to correct the sentencing error, reversed the judgment, and remanded for the trial court to "resentence appellant consistent with this opinion by conducting a sentencing hearing complete with all applicable procedures." (*Id.* at PageID 643-47; *see also State v. Moore*, No. 2017–T–0104, 2018 WL 2100584 (Ohio Ct. App. May 7, 2018)).

## F.     Resentencing in 2018

On May 31, 2018, Mr. Moore presented to the trial court and was resentenced to eight years in prison. (ECF #9-1 at PageID 649-52). On June 18, 2018, Mr. Moore filed a notice of appeal to the Eleventh District. (*Id.* at PageID 693). In his brief, through counsel, Mr. Moore raised the following assignments of error:

> **Assignment of Error No. 1.** The imposed prison sentence was disproportionate and excessive for the purposes set forth in Revised Code Sec. 2929.11(A) and not necessary to protect the public.
>
> **Assignment of Error No. 2.** A prison sentence in this case is an unreasonable and unnecessary burden on government resources.
>
> **Assignment of Error No. 3.** The restitution and court costs imposed infringes upon appellant's rights under the Eighth and Fourteenth Amendments to the United States Constitution, and Article I, Section 9 of the Ohio Constitution.

(*Id.* at PageID 667-83). On June 24, 2019, the Eleventh District affirmed the trial court's

judgment. (*Id.* at PageID 709-20; *see also State v. Moore*, No. 2018-T-0056, 2019 WL 2578557 (Ohio

Ct. App. June 24, 2019), *appeal not allowed*, 132 N.E.3d 702 (Ohio 2019) (table)).

On July 29, 2019, Mr. Moore, *pro se*, filed a notice of appeal and a memorandum in

support of jurisdiction to the Supreme Court of Ohio setting forth the following propositions of

law:

> **Proposition of Law No. 1.** Ineffective assistance of appellate counsel on appeal, pursuant to 6th and 14th Amendment.

> **Proposition of Law No. 2.** A court is bond by the R.C. 2929.14 – (C)(4)(a), (b), or (c) to make the finding under this statute, before sentencing are to be ran consecutively sentence on multiple prison terms. Appellant-Defendant sentence is contrary to law if trial court does not make the necessary finding.

(*Id.* at PageID 721-37) (cleaned up). On October 15, 2019, the Supreme Court of Ohio declined

jurisdiction. (*Id.* at PageID 780; *see also State v. Moore*, 132 N.E.3d 702 (Ohio 2019) (table)).

## G.    Second Application to Reopen the Direct Appeal

On July 15, 2019, Mr. Moore, *pro se*, filed a "reconsideration for application for reopening

to appeal Rule 26(B)(5)," raising the following assignments of error:

> **Assignment of Error No. 1.** The appellants appellate counsel rendered constitutionally ineffective assistance based on his failure to move to withdraw and his concomitant inability to raise a meritorious issue, of ineffective assistance of standby counsel. Inviolation of U.S.C.A. of the 6 & 14 Amendments.

> **Assignment of Error No. 2.** The Appellants appellate counsel rendered constitutionally ineffective assistance base on his failure to move to withdraw and his concomitant inability to raise a meritorious issue, of perjured testimony and credibility of witnesses and Brady violation and tampering with evidence.

> **Assignment of Error No. 3.** The Appellants appellate counsel rendered constitutionally ineffective assistance base on his failure to move to withdraw and his concomitant inability to raise a meritorious issue, of Speedy-Rights issue, and where there is a probable cause issue with the warrant and Affidavit of Police.

> **Assignment of Error No. 4.** The Appellant appellate counsel rendered constitutionally ineffective assistance base on his failure to move to withdraw and his concomitant inability to raise a meritorious issue of Protection clause or a denial of rights secured by the Due Process clause of the fourteenth Amendment where two or more official conspire to prevent defendants from getting equal protection of the law.

(ECF #9-1 at PageID 781-90) (*sic* throughout). On September 27, 2019, in an unpublished decision, the Eleventh District denied Mr. Moore's second application for reopening. (*Id.* at PageID 798-803).

On November 6, 2019, Mr. Moore filed a notice of appeal and memorandum in support of jurisdiction to the Supreme Court of Ohio setting forth a single proposition of law:

> Did Appellants Appellate Counsel rendered Constitutionally Ineffective Assistance base on his failure to move to withdraw and his concomitant inability to raise meritorious issues of Malicious Prosecution, Brady Violation, And the fact that police officers that investigation of the case deliberately hidden the true facts, and false reports and perjured testimony.

(*Id.* at PageID 804-15) (*sic* throughout). On February 4, 2020, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 850; *State v. Moore*, 138 N.E.3d 1164 (Ohio 2020) (table)).

## H.    Complaint of Writ Mandamus

On August 21, 2019, Mr. Moore, *pro se*, filed a Complaint of Mandamus with the Supreme Court of Ohio requesting the Court compel the administrative judge and the prosecuting attorney to file criminal charges against several judges, prosecuting attorneys, detectives, and witnesses from the underlying criminal trial. (ECF #9-1 at PageID 851-65). On November 6, 2019, the Court granted the State's motion to dismiss. (*Id.* at PageID 980).

11

I.    **Motion for Relief from Void Judgment**

On March 2, 2020, Mr. Moore, *pro se*, filed a motion for relief in the Eleventh District. (ECF #9-1 at PageID 981-1153). The Eleventh District overruled the motion, finding the issues presented in the motion barred by *res judicata*. (*Id.* at PageID 1154-56).

FEDERAL HABEAS CORPUS

Mr. Moore's *pro se* petition asserts the following grounds for relief:

**Ground One**: The trial court err[ed] by failing to perform an appropriate inquiry as to determine whether the appellant fully and intelligently understood the relinquishing of his right to counsel, by disregarding the appellant's clear ignorance of essential court proceedings and rules, and failing to inform him of the statutory offenses included in the nature of his charge, and possible defenses to the charge and mitigation thereof before accepting his Crim. R. 44(C), waiver?

**Supporting facts**: In order to establish an effective waiver of the right to counsel, a trial court must make a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right. Because a defendant waives his rights to counsel it the weight on the court the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver of the constitutional right to counsel, a judge must investigate as long as thoroughly as the circumstances of the case before him demand.

The fact that an accused may tell him that he is informed of his right o counsel and desires to waive this right does not automatically end the judge's responsibility to be valid such waiver must be made with the apprehension of the nature of the charges, the statutory offenses included with them, the range of allowable punishments thereunder, possible defense to the charge and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

The right to be heard would be in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even intelligent and educated laymen have small or sometimes no skill in the science of the law. If charged with a crime, he is incapable, generally of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence.

**Ground Two:** The trial court errs by failing to enforce the Appellant's Subpoenas so that he could have witnesses and evidence critical to his defense present at trial, but telling him the court could not tell him how to get his subpoenas enforced

because he was acting pro se, when the court was aware of its duty to protect the appellant's right to compulsory process?

**Supporting facts**: By failing to enforce the defendant's subpoenas so that he could have witness and evidence critical to his defense present at trial. By telling the defendant the court could not tell him how to get his subpoenas enforced because he was acting pro se, when the court was aware of its duty to protect the defendant rights to Compulsory Process.

The right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other 6th Amendment's rights is the most basic ingredients of Due Process of the Law, the right to offer the testimony of witnesses, and to compel their attendance, in plain terms the right to present a defense.

**Ground Three**. The trial court errs when it failed to help the appellate secure an expert witness that was essential to his defense to rebuttal the state's DNA evidence and expert witness because he wished to represent himself, and denying the one he did attempt to obtain.

**Supporting facts**: Due Process, as guaranteed by the 5th and 14th Amendments of the United States Constitution and Section 16, Article I of the Ohio Constitution, required that an indigent criminal defendant be provided funds to obtain expert assistance at State expense only when the trial court finds, in the exercise of sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert assistance would aid in his defense, and (2) that denial of the requested exert assistance would result in an unfair trial. In this case, the state relied heavily on results of DNA.

**Ground Four**. The trial court err by failing to properly rule on the appellant's Motion in limine, motion to suppress, which was ruled on without gearing, motion for discovery, and subsequently denying them without sufficient reason?

**Supporting facts**: It is undisputed that the trial court abuses its discretion when it fails to hold a hearing on the pending motion above prior to trial. Instead the trial court rule on motion day of the trial.

**Ground Five**. The state violated the appellant's right to Due Process by failing to provide him necessary lab reports DNA analysis protocols witness lists prior to trial, and other items relevant to the case at hand, after the appellant made repeated requests for such items, prior to trial, which were material to his guilty?

**Supporting facts**: The state violated the defendants' rights to Due Process by suppressing favorable evidence for the defendant that was material to his guilt after

13

he made numerous requests for Discovery. Discovery rights to copy upon receipt of a written demand for discovery by the defendant the prosecuting attorney shall provide copies or photograph, the following items related to the particular case, indictment, information, or complaint, and which are material to the preparation of a defense, or are intended to be use by the prosecutor attorney as evidence at trial. The defendant pro se tell the court on Feb 11, 2014 that is exculpatory evidence missing out of discovery along with other items.

**Ground Six**. The trial erred when it ordered consecutive sentences under R.C. 2929.14 without making all the required findings on the record and without incorporating those findings into the courts sentencing entry.

**Supporting facts**: Appellant asserts the trial court imposition of consecutive sentences is contrary to law because the trial court failed to make the required findings. As a general rule, the starting point that a sentence of imprisonment shall be served concurrently, unless the trial court makes the findings outlined in R.C. 2929.14(C), (4) to justify consecutive sentences. Eighth amendment bars not only those punishments that are "barbaric" but those that are "excessive" in relation to the crime committed makes it unconstitutionally. Court may not impose a sentence and order it to be served consecutively with a future sentence that has not been imposed.

**Ground Seven.** Appellants rights against self-incrimination were violated when the trial court imposed a harsher sentence after it found the appellant had no remorse.

**Supporting facts**: Article I Section 10 of the Ohio Constitution provides, "No person shall be compelled in any criminal case to be a witness against himself. The language is essentially identical to the 5th Amendment to the United States Constitution, made applicable to the states through the 14th Amendment. A defendant who exercises his right to remain silent or continues to proclaim his innocence at sentencing forces him to be confronted with a Catch-22 dilemma. The reasoning is clear: In order to maintain a viable appeal or other post-conviction remedies, a defendant must not render his or her claims moot by acknowledging guilt and expressing remorse at the sentencing hearings.

**Ground Eight**. The court costs imposed at sentencing hearing infringes upon appellant's rights under the Eighth and Fourteenth Amendments to the United States Constitution, R.C. 2929.18 R.C. 2919(B)(5), R.C. 2947.14 and related section of the Ohio Constitution.

**Supporting facts**: At the hearing, the offender has the rights to present his ability to pay the find. If a court or magistrate determines after considering the evidence presented by an offender, that the offender is able to pay a fine, the determination shall be supported by findings of facts set forth in a judgment entry indicat the

14

offender's income, assets, and debts, as presented by the offender, and the offender, and the offender's ability to pay. The trial court discussed paying off the costs through "Community" work service. How can one be in the "Community" when he is sentence to prison? Is community work service even possible or an option when someone is sentence to an 8 year prison term.

**Ground Nine**. The Appellate counsel rendered ineffective assistance of counsel for Failing to raise the following issues on direct appeal.

**Supporting facts**: (1) The Trial court violated appellant's constitutional rights and committed plain error when it did not give appellant appeals counsels. A criminal is entitled to counsel on his first appeal as of right the trial court never appointed appeals counsel for defendant Moore pro se defendant was force to file an Appeal on his own by the trial court lack of answer. Defendant had to asks Eleventh District court of appeals to appoint counsel. Whose counsel was unable to prove effective representation. Proper-review is necessary to ensure that a criminal conviction has been obtained through a reliable process.

(2) The Trial court violated appellant's constitutional rights and committed plain err when it violated its own rule of court by violation of Criminal Rule 48(A)(B)(C), In which a prelaminar hearing should be held pursuant to Criminal Rule 5(B)(1), also violated Speedy Rights pursuant to R.C. 2945.71 and 2945.72 delay in trial for dismissal this violated.

(3) The Trial court violated appellant's rights to standby counsel by infringed on appellant's rights to get aid from standby counsel in which violated the equal protection of the Law pursuant to the 4th 5th 6th 11th 14th Amendments under Section 10, Article 1 of the Ohio Constitution.

(4) Did standby counsel make his self-ineffective pursuant to aid Through Civil Justice Act and American Bar Association pursuant to the 5th 6th 14th Amendment and 16 article 1 Ohio Constitution.

(5) Did the Trial court violated Subject-Matter-Jurisdiction when one of a State agency deprivation of any rights and privileges or immunities secured or protected by the United States Constitution pursuant to 242 2 of the Civil Rights Act and 42 USC Equal Protection of the Law is violated?

**Ground Ten**. Second Appellate counsel rendered Ineffective assistance of counsel for Failing to raise the following issues on direct Appeal.

**Supporting facts**: (a) The evidence establishes that the prosecutor withheld discovery that was favorable to the defense and prosecutor admits that he did not give the paperwork to the defense at the May 31, 2018 resentencing hearing.

(b) The evidence establishes that law enforcement tamper with evidence and made false police report and statements on how the methods used to collect DNA.

(c) The evidence establishes how the state witness made perjured testimony at trial.

(d) All issues and assignments of errors stemming from the direct appeal and the App. R. 26(B) Application have been fully exhausted to the highest state court.

(ECF #1 at PageID 8-13) (*sic* throughout).

### STANDARD OF REVIEW

AEDPA governs Mr. Moore's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes

16

"the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982); *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986) (federal courts must accept a state court's interpretation of its statutes and rules of practice).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal courts may review federal claims that were evaluated on the merits by a state court. Claims there were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not cognizable on federal habeas review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**Exhaustion of Available State Court Remedies**. A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, state corrective process is unavailable, or circumstances exist rendering such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in where petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444

F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain

"available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir.

2006). In contrast, where state court remedies are no longer available, procedural default

(discussed more fully below), rather than exhaustion, applies. *Id.*

 **Procedural Default**. Absent a petitioner demonstrating either cause and prejudice or that

failure to review the claim would result in a fundamental miscarriage of justice, a federal court will

not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763

(6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

 There are two avenues by which a petitioner's claim may be procedurally defaulted. *Id.*

First, procedural default occurs if a petitioner "fails to comply with state procedural rules in

presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure

to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit

perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to

petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state

court enforced the procedural rule; (3) whether the procedural rule is an adequate and

independent state ground on which the state can foreclose review of the federal constitutional

claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and

that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135,

138 (6th Cir. 1986).

 Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state

court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d

at 806 (citing *O'Sullivan*, 526 U.S. at 848; *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D.

Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims barring federal court review. *Williams*, 460 F.3d at 806; *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022) ("When [a state prisoner] has failed to [first present that claim to the state court in accordance with state procedures], and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'").

In Ohio, claims must be raised on direct appeal, if possible, otherwise *res judicata* bars their litigation in subsequent proceedings. *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013) (citing *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967)). Therefore, a petitioner is not entitled to raise claims in post-conviction proceedings that could have been raised on direct appeal. *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). Consequently, if an Ohio petitioner fails to raise a claim on direct appeal that could have been raised at that time, the claim is procedurally defaulted. *Id.*

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice

produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's *pro se* status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Futility cannot constitute cause for the procedural default of a claim for failure to raise a claim on direct review if it means simply that a claim was "unacceptable to that particular court at that particular time." *Engle v. Isaac,* 456 U.S. 107, 130, n.35 (1982). Ineffective assistance of counsel may serve as cause to excuse a procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Attorney neglect, ignorance, or inadvertence does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient under the test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Coleman*, 501 U.S. at 752-755; *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

**State Law Claims Not Cognizable on Federal Habeas Review.** The District Court will not have jurisdiction over a petitioner's claims for purposes of habeas corpus review if the claims do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). "The writ of habeas corpus is not available to

remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."). Merely asserting that a state law error violates the Federal Constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (internal quotation omitted); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted).

Nonetheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure). The habeas petitioner bears the burden of showing "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

24

DISCUSSION AND ANALYSIS

Mr. Moore first claims no state court decided the merits of his constitutional claims and, therefore, his claims should not be adjudicated through the deferential lens of AEDPA but instead should be reviewed *de novo* under pre-AEDPA standards. (ECF #13-17 at PageID 1684-85). Supreme Court precedent establishes that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. The presumption can be overcome "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99-100. But Mr. Moore makes no such showing, resting instead on the generalized assertion that "the Ohio courts did not evaluate on the merits of the grounds raised." (ECF #13-17 at PageID 1685). Because Mr. Moore has not overcome the presumption that the state court adjudicated his constitutional claims on the merits, I conclude AEDPA review applies to his petition. Applying AEDPA principles and case law set forth above, I further conclude Mr. Moore's claims in Grounds One through Eight are procedurally defaulted and all ten Grounds for Relief are otherwise meritless or not cognizable on federal habeas review. Therefore, I recommend the District Court **DISMISS** the petition in its entirety.

## A.    Procedural Default

Grounds One through Eight of the petition consist of the five claims Mr. Moore asserted *pro se* and the three supplemental claims appellate counsel asserted on direct appeal to the Eleventh District. The Eleventh District issued its decision on July 31, 2017. (ECF #9-1 at PageID 479). Ohio law provides that an appeal to the Supreme Court of Ohio must be filed within 45

25

days of the relevant appellate court ruling. Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i). Thus, Mr. Moore's deadline to appeal expired on September 14, 2017, well before he filed his notice of appeal and motion to file a delayed appeal on November 16 or December 27, 2017.

The Rules of Practice of the Supreme Court of Ohio require a motion for delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio S. Ct. Prac. R. 7.01(A)(4)(a)(i). In addition, the motion must be accompanied by a supporting affidavit and a copy of the decision being appealed. Ohio S. Ct. Prac. R. 7.01(A)(4)(a)(ii), (iii). In his motion for leave, Mr. Moore claimed he provided his notice of appeal to the prison mail room at the Richland Correctional Institution on August 7, 2017, the same day he presented his motion for reconsideration of his application to reopen the direct appeal under Rule 26(B). (ECF #9-1 at PageID 482). He further asserted that the prison mail room was responsible for the delay in filing his notice of appeal. (*Id.* at PageID 483, 486). The Supreme Court of Ohio summarily denied Mr. Moore's motion to file a delayed appeal. (*Id.* at PageID 517). The state Supreme Court's entry denying Mr. Moore's motion constitutes an adequate procedural ruling sufficient to bar federal court review of his habeas corpus petition; the denial does not constitute a ruling on the merits. *Bonilla,* 370 F.3d at 497.

A petitioner procedurally defaults claims for habeas relief by not presenting them to the state courts in accordance with the state's procedural rules. *Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2009). Mr. Moore did not file a timely notice of appeal with the Supreme Court of Ohio in accordance with its procedural rules, the court actually enforced the state procedural sanction by denying Mr. Moore's motion to file a delayed appeal, and the state procedural rule is an adequate

26

and independent state ground on which the state can rely to foreclose review of a federal constitutional claim, satisfying the first, second, and third *Maupin* factors.

A petitioner may overcome procedural default if he can demonstrate cause for not following the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. Mr. Moore does not make any explicit arguments to overcome procedural default, but to the extent he blames the delay in filing his notice of appeal to Richland Correctional Institution's prison mail room, he has not demonstrated cause sufficient to overcome the procedural default. True, government inaction, including delay in mailing a prisoner's court filing, is an objective factor that may constitute cause for a prisoner's failure to comply with a state's procedural rule. *See Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) ("when a prisoner submits a petition to the prison mailroom five days prior to a filing deadline and it is not delivered there is cause to excuse the procedural default").

But nothing in the record supports Mr. Moore's claim that he timely submitted his documents to prison officials for mailing. It is the petitioner's burden to establish cause and prejudice sufficient to overcome a procedural default. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). Here, Mr. Moore relies on his own self-serving affidavit to support his assertion that the prison mail room caused the delay. The Sixth Circuit recognizes that an unsupported and self-serving affidavit by a habeas petitioner is "inherently suspect" and "unreliable," and "must be reviewed with great skepticism." *Freeman v. Trombley*, 483 F. App'x 51, 58-59 (6th Cir. 2012). Under these circumstances and considering the lack of any supporting evidence indicating Mr. Moore timely provided his notice of appeal to the prison mail room, I am not persuaded that he has established cause sufficient to overcome his procedural default. *See Ellis v. Warden, Ross*

*Correctional Institution,* No. 2:17-cv-415, 2018 WL 2183297, at *10 (S.D. Ohio May 11, 2018), *report and recommendation adopted,* 2018 WL 2943233 (S.D. Ohio Jun. 12, 2018). Because both cause and prejudice must be shown to excuse a procedural default, failing to establish cause obviates any need to consider prejudice. *Murray v. Carrier,* 477 U.S. 478, 494-95 (1986).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental mischarge of justice will occur if the claims are not considered. *Coleman,* 501 U.S. at 750; *Murray,* 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). Mr. Moore cannot overcome procedural default because, while he asserts innocence, he has not supported the assertion with new reliable evidence that was not presented at trial.

Mr. Moore procedurally defaulted his claims in Grounds One through Eight by not timely filing a notice of appeal to the Supreme Court of Ohio on direct appeal. He has not established cause and prejudice sufficient to overcome the procedural default, nor has he shown that a fundamental miscarriage of justice will occur if his claims are not considered. Accordingly, I recommend the District Court **DENY** the claims in Grounds One through Eight as procedurally defaulted.

In addition, Mr. Moore has procedurally defaulted subclaim five of Ground Nine— which asserts "the Trial court violated Subject-Matter-Jurisdiction when one of a State agency deprivation of any rights and privileges or immunities secured or protected by the United States Constitution pursuant to 242 2 of the Civil Rights Act and 42 USC Equal Protection of the Law" (ECF #1 at PageID 5)—by not pursuing the claim through Ohio's "ordinary appellate review procedures." *See*

*Williams,* 460 F.3d at 806 (citing *O'Sullivan,* 526 U.S. at 848). Mr. Moore first asserted this claim to the Supreme Court of Ohio on appeal from the Eleventh District's decision denying his application for reopening the direct appeal. (*See* ECF #9-1 at PageID 574-90). He did not assert this particular subclaim to the Eleventh District in his application for reopening the direct appeal; rather, he asserted generalized claims for ineffective assistance of appellate counsel for not raising issues of ineffective assistance of standby counsel and a violation of speedy trial rights. (*See id.* at PageID 532-50). Because Mr. Moore did not first present subclaim five of his ninth Ground for Relief to the Eleventh District before pursuing the subclaim before the Supreme Court of Ohio, the subclaim is procedurally defaulted. *See Baston,* 282 F. Supp. 2d at 661. Mr. Moore has not asserted cause and prejudice sufficient to overcome this procedural default, nor has he supported a valid actual innocence claim with new reliable evidence not presented at trial that is so strong a court cannot have confidence in the outcome of the trial. The subclaim has never been adjudicated on the merits because Mr. Moore deprived the Eleventh District of the ability to consider the subclaim and the Supreme Court of Ohio declined jurisdiction of his appeal. Accordingly, I recommend the District Court **DENY** subclaim five of Ground Nine as procedurally defaulted.

**B.    All Grounds for Relief are meritless or not cognizable on federal habeas review.**

    **1.    Ground One**

In his first Ground for Relief, Mr. Moore claims the trial court failed to perform an appropriate inquiry to determine whether he "fully and intelligently" waived his right to counsel. The Eleventh District addressed this issue on direct appeal:

> [¶ 14] During pretrial hearings, appellant waived his right to counsel and elected to represent himself. Appellant maintains the record reflects he lacked an

29

understanding of the charge against him and that he "lacked knowledge of the proceedings" when he waived his right to counsel. Appellant argues his waiver of counsel was not knowingly, intelligently, and voluntarily made because the trial court did not make sufficient inquiry into appellant's understanding of the nature of the charge, the range of allowable punishments, and the possible defenses.

[¶ 15] "Pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, a criminal defendant has the right to assistance of counsel for his defense." A defendant may waive his right to counsel when the waiver is voluntary, knowing, and intelligent. Furthermore, pursuant to Crim.R. 44(A), prior to waiver a criminal defendant charged with a serious crime must be "fully advised of his right to assigned counsel."

[¶ 16] There is no precise formula or script the trial court must implement with defendants who indicate a desire to waive their right to counsel. "'The information a defendant must possess in order to make an intelligent election * * * will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.'" "'To be valid such a waiver must be made with an apprehension of the nature of the charges, * * * the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'"

[¶ 17] At the January 23, 2014 pretrial hearing, the trial court questioned appellant about his education, prior criminal history, and understanding of the rules of criminal procedure and evidence. Appellant indicated he had previously represented himself in criminal matters, although never at a trial by jury. With regard to his educational background appellate stated, "I went to college in small business. I took microcomputers. I took plumbing class. I took, like I said, paralegal classes." Appellant also explained his understanding of the rules of criminal procedure, stating, "I'm very familiar with the rules of criminal procedural and the evidence rules, Your Honor."

[¶ 18] The trial court extensively inquired into appellant's understanding of his right to have counsel appointed to him, as well as his understanding of the implications of waiving counsel and representing himself in a jury trial. At the trial court's request, the prosecutor informed appellant that the charge against him was "one count of Burglary, F2." The following colloquy occurred with regard to the nature of the charge and range of punishments:

**The Court**: All right. Have you reviewed the elements of what that crime is?

**Appellant**: Yes, I have, Your Honor.

30

**The Court**: Do you understand that under state law there are certain sentencing guidelines that will be used in determining your sentence if you're found guilty?

**Appellant**: Yes, sir. I think it carries two to eight, Your Honor.

**The Court**: That's correct. Which means it's up to the Court to discern, if you get found guilty it could be between two years and it could go up to eight years.

**Appellant**: Yes, sir.

**The Court**: Do you understand if you're found guilty of the crime charged in the indictment that the Court can order, I said up to two to eight years, and also monetary penalty of—what's the fine, potential fine?

**The Prosecutor**: The potential fine on this, Your Honor, is up to a $15,000 fine.

[¶ 19] Additionally, the court inquired about possible defenses, and appellant explained, "[f]irst I got alibi, that's one thing. And then the second thing is, like you said, it wasn't me. Then another thing is, I lived at the house." The court then explained to appellant the procedures for using an alibi defense and for obtaining and using an expert witness at trial; appellant indicated his understanding of these procedures.

[¶ 20] Based on the foregoing, the trial court made a sufficient inquiry into appellant's broad understanding of the charges against him and of the procedures involved in representing himself, in addition to the possible range of punishments, to determine that appellant knowingly, intelligently, and voluntarily waived his right to counsel. Therefore, the trial court complied with Crim.R. 44.

[¶ 21] Appellant's first assignment of error is without merit.

*Moore*, 2017 WL 3226468, at *2-*3 (citations omitted).

The Sixth Amendment of the United States Constitution provides the rights necessary to a full defense: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. In *Faretta v. California*, 422 U.S. 806, 807 (1975), the Supreme Court reiterated that the Sixth and Fourteenth Amendments guarantee every defendant

a right to counsel in criminal prosecutions. The Court also determined the Sixth Amendment implies the right to self-representation. *Id.* at 821. Because self-representation precludes a defendant from reaping the traditional benefits associated with representation by counsel, the Supreme Court mandates that an individual wishing to self-represent must "knowingly and intelligently" waive the right to counsel on the record. *Id.* at 835.

Whether the defendant has knowingly and intelligently waived the right to counsel "depend[s], in each case, upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *see also Iowa v. Tovar,* 541 U.S. 77, 88 (2004) ("The information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding."). "[T]o be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948).

Although a defendant "need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice was made with eyes open." *Faretta*, 422 U.S. at 835 (internal quotation omitted). At trial, counsel must help a defendant adhere to the rules of procedure and evidence, comprehend the subtleties of *voir dire*, examine and cross-examine witnesses effectively,

object to improper questions, and more. *Tovar*, 541 U.S. at 890 (citing *Patterson v. Illinois*, 487 U.S. 285, 299 n.13 (1988)). The Supreme Court requires the trial court vigorously convey warnings of the pitfalls of proceeding to trial without counsel. *Patterson*, 487 U.S. at 298.

The Eleventh District's adjudication of Mr. Moore's claim is a reasonable application of Supreme Court precedent. The Eleventh District identified the correct governing rules and principles and reasonably applied the rules and principles to Mr. Moore's case. The Eleventh District's decision noted the trial court's inquiry into Mr. Moore's education, including higher education courses; prior experience with *pro se* representation; knowledge about the elements of the charged crime, the rules of procedure, and the rules of evidence; the allowable range of punishment; and possible defenses. Only after that extended colloquy did the trial court conclude, reasonably enough, that Mr. Moore had knowingly and intelligently waived his right to counsel.

Contrariwise, Mr. Moore stresses his lack of knowledge of the proceedings and his inability to understand possible defenses to the charge to support his constitutional claim. He alleges the trial court did not advise him of the nature of the charged offense, the statutory offenses, and allowable punishments. (ECF #1-2 at PageID 45-47). But the record reflects the trial court sufficiently inquired into Mr. Moore's background and his awareness of the nature of the charge, the statutory offense and elements thereof, the allowable punishment, and possible defenses before satisfying itself that Mr. Moore appropriately understood the matter and was knowingly and intelligently waiving his right to counsel.

Federal jurisprudence does not require the trial court to determine that the defendant has the skill and experience of a lawyer before accepting a waiver of the right to counsel; rather, courts protect a defendant's right to counsel by ensuring the defendant is aware of what is being

relinquished in waiving that right. *Faretta*, 422 U.S. at 836 ("For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself."). Though not emphasized in the Eleventh District's decision, the trial court informed Mr. Moore about the pitfalls of self-representation to Mr. Moore, including the procedural requirements associated with presenting an alibi defense, assuming the duties of gathering evidence and investigating the case on his own behalf, issuing subpoenas, making objections, questioning witnesses, and doing his own legal research. (ECF #9-2 at PageID 1174-89). Before Mr. Moore formally waived his right to counsel the trial court expressed its opinion that a trained lawyer would better serve him. (*Id.* at PageID 1190). Despite these admonitions, Mr. Moore persisted in electing to self-represent:

> THE COURT: Now, in light of all the penalties that you might suffer if you are found guilty, and in all the difficulties of representing yourself, do you still desire to represent yourself and give up your right to be represented by a lawyer?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Are you making the decision freely and does it reflect your personal desire?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you have any questions about what I've asked you? Do you need me to clarify anything?
>
> THE DEFENDANT: No. I'm good on everything, Your Honor.

(*Id.* at PageID 1191).

The record establishes that the trial court extensively questioned Mr. Moore to ensure he had a broad understanding of the matter and thoroughly advised him of the dangers and disadvantages of self-representation before accepting his waiver of the right to counsel. The record

34

belies Mr. Moore's claim that the trial court failed to inform him of the facts essential to a broad understanding of the matter. He has not established that the Eleventh District's adjudication was contrary to, or an unreasonable application of, clearly established federal precedent, as required by § 2254(d)(1), nor has he shown the adjudication resulted in a decision based on an unreasonable determination of the facts under § 2254(d)(2).

Accordingly, should it consider the merits of the first Ground for Relief, I recommend the District Court **DENY** it as meritless.

### 2. Ground Two

In his second Ground for Relief, Mr. Moore alleges the trial court did not protect his constitutional right to compulsory process. The Eleventh District addressed this issue on direct appeal as follows:

> [¶ 23] Appellant asserts the trial court denied him the right to compulsory process when it failed to compel the attendance of defense witnesses who he subpoenaed but were absent from trial. The trial court was not required to act sua sponte and grant appellant a continuance to find his witnesses or compel them to appear at trial. The record reflects that when appellant inquired about the subpoena process, the trial court instructed him to direct technical questions to his standby counsel. It appears appellant failed to consult with his standby counsel and also failed to request any appropriate form of relief from the trial court with regard to his subpoenas.

> [¶ 24] Appellant's second assignment of error is without merit.

*Moore*, 2017 WL 3226468, at *3-*4 (citations omitted).

The Sixth Amendment guarantees a defendant the right to have compulsory process for obtaining witnesses in his favor. *Washington v. Texas*, 388 U.S. 14, 18 (1967). The compulsory process clause, however, does not guarantee the appearance of witnesses; instead, it merely requires the government exercise due diligence in a good faith effort to secure the attendance of

subpoenaed witnesses. *United States v. Barker*, 553 F.2d 1013, 1022 (6th Cir. 1977). The Sixth

Circuit recognizes that defendants may waive the right of compulsory process by simple inaction:

> Generally, the Fourteenth Amendment to the Federal Constitution and the
> Constitution of the State of Ohio, art. 1, Sec. 10, guarantee a person accused of a
> crime certain rights of which he may not be deprived without his consent. Among
> these is the right to trial by jury, the right to appear in person or by an attorney, to
> have compulsory process to secure the attendance of witnesses in his behalf and to
> have a fair and impartial trial according to the method of procedure generally
> followed in courts in the trial of criminal cases. All of these enumerated rights are
> for the benefit of the accused. He alone is interested in them and under well-settled
> legal principles, the accused may waive those growing out of the Constitution, as well
> as irregularities occurring in the trial of the cause and such a waiver may be shown
> buy acts and conduct and also by non-action.

*Tompsett v. Ohio*, 146 F.2d 95, 98 (6th Cir. 1945). Courts within the Sixth Circuit have concluded

a defendant waives the right to compulsory process by not moving the court for such process. *See,*

*e.g.*, *Brown v. Kowalski*, No. 15-12346, 2018 WL 2943442, at *4 (E.D. Mich. Jun. 12, 2018)

(denying habeas relief where petitioner waived right to compulsory process by proceeding with trial

in witnesses' absence); *see also United States v. Damra*, 1:06 CR 367, 2009 WL 10696698, *3 (N.D.

Ohio Apr. 9, 2009) (finding defendant waived right to compulsory process by not raising witness's

absence before the court).

Mr. Moore takes issue with the trial court's refusal to advise him of the process for securing

the attendance of subpoenaed witnesses, claiming the trial court's instruction to figure it out on

his own or ask standby counsel was "down-right wrong, and violated its duty as an impartial

arbiter." (ECF #1-2 at PageID 50). In support, he cites *State v. Smith*, No. 2015–T–0001, 2015 WL

4881090 (Ohio Ct. App. Aug. 17, 2015), and asserts:

> The trial judge, as impartial arbiter, cannot allow all of the constitutional rights to
> be compromised simply because a defendant waives his right to counsel. When the
> right to counsel is waived this puts an added pressure or burden on the trial court to
> ensure all of the other rights independently granted to the defendant have not been

36

> waived or forfeited due to the defendant's self-representation. As most pro se
> defendants do not have the technical savvy and/or legal expertise in knowing which
> rights to raise, they must be provided an adequate platform.

(*Id.* at PageID 51).

In *Smith*, the court of appeals concluded that readily available standby counsel provides an adequate platform that helps ensure *pro se* defendants avoid the waiver or forfeiture of constitutional rights. 2015 WL 4881090, at *6. The appellate court took issue with the trial court's requirement that appointed standby counsel remain in the courtroom and not participate during the whole trial. *Id.* at *6. In this case, at a January 23, 2014 pretrial, Mr. Moore asked about the process to compel witness attendance at trial. The trial court appropriately directed Mr. Moore to seek answers from standby counsel. Further, at Mr. Moore's request, the Trumbull County Clerk of Court issued eight subpoenas, all of which were served successfully:

| |
|---|
| 12/16/2013  SUBPOENA ISSUED TO:  KENT STATE BRANCH ON 12-19-13 BY CERTIFIED MAIL |
| 12/16/2013  SUBPOENA ISSUED TO: WILLIAM BOBULSKY ON 12-19-13 BY CERTIFIED MAIL |
| 12/16/2013  SUBPOENA ISSUED TO:  PNC BANK ON 12-19-13 BY CERTIFIED MAIL |
| 12/16/2013  SUBPOENA ISSUED TO: BEST BUY ON 12-19-13 BY CERTIFIED MAIL |
| 12/16/2013  SUBPOENA ISSUED TO:  VALUE CITY FURNITURE ON 12-19-13 BY CERTIFIED MAIL |
| 12/16/2013  SUBPOENA ISSUED TO:  POSTMASTER ON 12-19-13 BY CERTIFIED MAIL |
| 12/16/2013  SUBPOENA ISSUED TO:  TRUMBULL CAREER & TERM CENTER ON 12-19-13 BY CERTIFIED MAIL |
| 12/16/2013  SUBPOENA ISSUED TO:  HOWLAND TOWNSHIP  POLICE DEPARTMENT ON 12-19-13 BY CERTIFIED MAIL |

*State v. Moore*, Trumbull C.P., Case No. 2013 CR 00775 (non-document entries dated Dec. 16, 2013) (available at http://courts.co.trumbull.oh.us/eservices/home.page.2).

37

Mr. Moore claims the trial court "refus[ed] to enforce" his subpoenas. (ECF #1 at PageID 47). Not quite. At trial, after the state presented its case, the trial court directed Mr. Moore to call a witness, to which he replied, "I don't know where my witness went, Your Honor, so I guess I am not calling a witness." (ECF #9-2 at PageID 1451).

Mr. Moore did not raise the absence of a witness as an issue to the trial court when he had the opportunity to do so; rather, he chose to proceed to trial without his subpoenaed witnesses, thereby waiving his right to compulsory process. If the District Court finds Mr. Moore did not procedurally default his second Ground for Relief, then I recommend the District Court **DENY** it because Mr. Moore waived the right to compulsory process.

### 3.    Ground Three

In his third Ground for Relief, Mr. Moore alleges the trial court failed to help him secure an expert witness. (ECF #1 at PageID 51-56). He also asserts the trial court erred by denying his motion for expert funds to hire the expert witness he attempted to obtain. (*Id.*)

To the extent Mr. Moore claims the trial court had a duty to perform legal chores by sourcing an expert or aiding him in preparing a defense, Supreme Court caselaw holds otherwise. In *McKaskle v. Wiggins*, 465 U.S. 168 (1984), the Court declared "[a] defendant does not have the constitutional right to receive personal instruction from the trial judge on courtroom procedure" and "the Constitution [does not] require a judge to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course." *Id.* at 183-84; *see also Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000) ("[T]he trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal 'chores' for the defendant that counsel would normally carry out").

In determining whether Mr. Moore's waiver of counsel was knowing and intelligent, the trial court explicitly stated it would not function as his lawyer or provide any legal assistance, advice, or help. (ECF #9-2 at PageID 1178-79, 1181). When asked about the potential use of experts at trial, Mr. Moore stated he was writing a letter to the Public Defender's office to obtain a list of possible forensic experts. (*Id.* at PageID 1184). The trial court appointed standby counsel for the limited purpose of answering Mr. Moore's technical questions, such as how to obtain a DNA expert, and later explained the necessary content of a motion for funds to hire an expert. (*Id.* at PageID 1185, 1192, 1194, 1207). At a later pretrial hearing, Mr. Moore informed the trial court he no longer intended to request funds to hire an expert witness, conceding his DNA was in the residence because he lived there. (*Id.* at PageID 1248-49). Mr. Moore then filed a motion for expert assistance that the trial court denied because the fee was excessive and the proffered DNA expert had been denied expert status in other courts. (*Id.* at PageID 1265). The court suggested Mr. Moore ask standby counsel for the names of additional DNA experts to contact if he wished to obtain an expert. (*Id.*).

The Eleventh District concluded the trial court did not abuse its discretion in denying Mr. Moore's motion for funds to hire an expert:

> "'As a matter of due process, indigent defendants are entitled to receive the 'raw materials' and the 'basic tools of an adequate defense.'" However, the state is not required to provide an indigent criminal defendant with the funds to obtain an expert witness "upon mere demand of the defendant" and "in absence of a particularized showing of need." The state is required to provide those funds "only where the trial court finds, in the exercise of sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial."
>
> . . .

> The record reflects that appellant failed to make a particularized showing to the trial court that an expert would aid in his defense and that denial of the requested expert would result in an unfair trial. Additionally, the trial court found appellant's requested expert charged an unreasonable fee of $2,000 per day and had been denied expert status in other courts. The trial court explained to appellant that it was not necessary for him to use an expert witness where he did not contest that the DNA found at the house was his; appellant's defense was premised on the assertion that he had lived with the victim, so his blood was present at the scene prior to the commission of the offense.

*Moore,* 2017 WL 3226468 at *4-*5 (citations omitted).

The Supreme Court has recognized the general principle that the government must provide indigent defendants with the "basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt v. North Carolina,* 404 U.S. 226, 227, (1971). Although the government need not purchase for the indigent defendant all the assistance that a wealthier defendant might buy, fundamental fairness requires that indigent defendants have "an adequate opportunity to present their claims fairly within the adversary system." *Ross v. Mofitt,* 417 U.S. 600, 612 (1974).

*Ake v. Oklahoma,* 470 U.S. 68 (1985), established that as part of the basic tools of an adequate defense, an indigent defendant has a due process right to the appointment of a defense psychiatrist when the defendant "demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." *Id.* at 83. The Supreme Court subsequently declined to extend *Ake's* holding to the appointment of a criminal investigator, fingerprint expert, and ballistics expert and declined to address the question of "what if any showing would [entitle] a defendant to [private non-psychiatric] assistance" as a matter of federal constitutional law. *Caldwell v. Mississippi,* 472 U.S. 320, 323 n.1 (1985).

The Supreme Court has not explicitly extended *Ake* to non-psychiatric experts. *See Conklin v. Schofield*, 366 F.3d 1191, 1206 (11th Cir. 2004) ("[T]he Supreme Court has not yet extended *Ake* to non-psychiatric experts."), *cert. denied*, 544 U.S. 952 (2005); *Hawkins v. Mullins*, 291 F.3d 658, 671 (10th Cir. 2002) (noting that the Court has not "specifically" extended *Ake* to investigators and other experts). Therefore, it is an open question whether *Ake's* holding applies to requests for non-psychiatric experts. *See Bergman v. Howard*, 54 F.4th 950, 958 (6th Cir. 2022). Because the Supreme Court has not explicitly extended *Ake* to require the appointment of non-psychiatric experts, Mr. Moore cannot show that any failure to fund a DNA expert was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Therefore, if Ground Three is not procedurally defaulted, I recommend the District Court **DENY** it as meritless.

### 4.    Ground Four

In his fourth Ground for Relief, Mr. Moore asserts the trial court erred by not properly ruling on pretrial motions. (ECF #1 at PageID 56). Specifically, Mr. Moore claims the state violated his right to due process by not providing him with exculpatory discovery material, including lab reports, DNA analysis protocols, and a witness list prior to trial. (*Id.*) The Eleventh District considered and addressed these assignments of error together:

> [¶ 33] Appellant argues the trial court failed, prior to trial, to rule on his motion in limine, motion for discovery, and motion to allow an expert witness. Appellant additionally argues it was an abuse of discretion for the trial court to deny his oral requests for a suppression hearing and to deny his motion to suppress filed February 7, 2014, without holding a hearing.

> [¶ 34] As stated above, appellant's motion for an expert witness was denied at the May 7, 2015 pretrial hearing. Additionally, the trial court reviewed appellant's motion for discovery on multiple occasions, with the prosecutor explaining at the February 6, 2014 pretrial hearing that "I have given him discovery. Your, Honor, the state is always seeking additional evidence with regards to criminal acts, so in the event that additional evidence becomes available, I'll provide it to him as it comes

41

in." At subsequent hearings, the trial court continually addressed appellant's discovery requests and ensured that he received discovery from the prosecutor. The trial court, therefore, addressed appellant's motion to allow an expert witness and motion for discovery prior to trial.

[¶ 35] Further, appellant maintains he filed a motion in limine on February 5, 2014; however, the motion to which appellant directs us is an untitled motion requesting the trial court to allow appellant "to wear regular clothing in lieu of county jail clothes at suppression hearing and at trial." The trial court granted that motion. Prior to trial, the trial court reviewed a "request to allow evidence motion" filed by appellant on February 11, 2014. In this motion, appellant listed evidence he planned to present at trial and requested that the trial court make a ruling allowing the evidence to be admitted during trial. The trial court stated, "I guess I could call this a motion in limine" and explained to appellant that "everything set forth in this may or may not be relevant to an appropriate issue at trial, so I can reserve ruling on those." Appellant's argument with regard to this motion is without merit.

[¶ 36] We next address appellant's contentions that that the trial court abused its discretion when it denied his oral requests for a suppression hearing and when it denied appellant's motion to suppress filed February 7, 2014, without first holding a hearing. If a motion to suppress meets the minimum standards of Crim.R. 47, the trial court must hold a suppression hearing. Whether a motion to suppress satisfies Crim.R. 47's minimum standards is a legal question that we review de novo.

[¶ 37] Pursuant to Crim.R. 47, a motion to suppress must "state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit." "A motion to suppress must state its legal and factual bases with sufficient particularity to put the prosecutor and the trial court on notice of the issues to be decided."

[¶ 38] At the January 23, 2014 pretrial, appellant requested a suppression hearing, and the court instructed that he had to file a suppression motion. Appellant handed the prosecutor an unfiled motion to suppress, to which the prosecutor responded, "basically what [appellant] has is a statement that says he wants some things suppressed, then in his memorandum in support he just states that he has a right to file a motion to suppress. He doesn't give me any basis for that." The court denied the request, suggested appellant review the motion with standby counsel, and instructed the motion had to set forth a specific basis for suppression of the evidence listed therein.

[¶ 39] At the February 6, 2014 pretrial, appellant again requested a suppression hearing. When asked what he was trying to suppress, appellant responded: "I'm trying to suppress basically everything that I—so far that I received. * * * I'm trying to

42

suppress police statements, blood samples and other stuff that was acquired by law enforcement that pertains to this case, Your Honor." The trial court denied appellant's request, stating, "[a] motion to suppress is a very limited issue that you have some specific thing, some specific constitutional right you believe was violated."

[¶ 40] Appellant filed a motion to suppress on February 7, 2014, requesting the trial court suppress "witness and victim statement, recording, police statement, and photographs." Appellant also requested the suppression of DNA evidence and an evidentiary hearing to be held on that issue. Appellant's motion contained no specific legal grounds or factual basis to support suppression of the evidence listed in the motion; his memorandum in support only refers to Crim.R. 12(C)(3), which states that a motion to suppress evidence must be raised prior to trial. The trial court addressed the motion to suppress preceding trial on June 1, 2015, and explained that appellant had failed to set forth specific grounds for suppressing the state's evidence. Appellant explained that he "[s]pecifically wanted to address the DNA evidence, the way it was handled during the chain of command." The trial court denied appellant's motion to suppress prior to trial. Because appellant failed to state specific legal and factual bases to support his motion to suppress, we find appellant's motion did not meet the requirements of Crim.R. 47, and it was not error for the trial court to deny the motion without holding an evidentiary hearing.

[¶ 41] Appellant's fourth and fifth assignments of error are without merit.

*Moore*, 2017 WL 3226468, at *5-*6 (citations omitted).

As the Eleventh District made clear, the trial court addressed Mr. Moore's pretrial motions, including the motion to suppress, motion in limine, and discovery motions. To the extent he claims the trial court erred in denying his motion to suppress without a hearing, the claim is not cognizable in federal habeas proceedings because Mr. Moore had a full and fair opportunity to litigate his motion in state court.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court declared: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. *Powell*'s "'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to

43

the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013).

A two-part inquiry resolves whether *Powell* precludes federal habeas review of Mr. Moore's claim. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether the presentation of the claim was in fact frustrated because of a failure of that mechanism." *Riley v. Gray,* 674 F.2d 522 (6th Cir. 1982). Ohio provides an adequate procedural mechanism to litigate such claims by way of a pretrial motion to suppress under Ohio Rule of Criminal Procedure 12 and a direct appeal as of right under Ohio Rules of Appellate Procedure 3 and 5.

The state court record and transcripts make patent that presentation of Mr. Moore's claim was frustrated not by a failure of the procedural mechanism, but by his own failure to file a motion to suppress that comports with the Ohio Rules of Criminal Procedure. Because this claim is not cognizable on federal habeas review, I recommend the District Court **DENY** it.

**5.     Ground Five**

In his fifth Ground for Relief, Mr. Moore asserts a *Brady* violation, claiming the State failed to disclose certain evidence, including, as best I can discern from his briefs, a lab report related to a thumbprint, report of tests and the DNA testing procedures used to determine his identity, a submission sheet of unknown DNA collected by the police department, the original serology report, and the preliminary DNA profiling report. (ECF #1-2 at PageID 64-68).

To prevail on a *Brady* claim, a habeas petitioner must show the State withheld exculpatory evidence that was material either to guilt or to punishment, irrespective of the prosecution's good

or bad faith. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Green*, 527 U.S. 263, 281-82 (1999). "Prejudice (or materiality) in the *Brady* context is a difficult test to meet[.]" *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Cone v. Bell*, 556 U.S. 449 (2009). A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 683 (1985). A habeas petitioner bears the burden of showing that the prosecution suppressed exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012).

The Eleventh District did not robustly analyze the contours of Mr. Moore's *Brady* claim but did address the issue on the merits nonetheless because it determined, as a factual matter, "the trial court continually addressed appellant's discovery requests and ensured that he received discovery from the prosecutor." *Moore*, 2017 WL 3226468, at *5. Indeed, the State provided all discovery to Mr. Moore, including the items he specifically requested. On the day of trial, before the jury was convened, the trial court confirmed with the prosecutor that his office provided Mr. Moore with the requested DNA reports, testing procedures, and an updated witness list to which Mr. Moore did not object. (ECF #9-2 at PageID 1281, 1278). At the close of the State's case, Mr. Moore objected to admission of State's Exhibit 5 containing the submission sheet, the original serology report, and the preliminary DNA profiling report, claiming he was not given these documents in discovery. (ECF #9-2 at PageID 277-78). The prosecutor, again, made clear the

documents were provided to Mr. Moore in discovery. (*Id.* at PageID 1278). Mr. Moore's pronouncements to the contrary are not supported by the record.

The Eleventh District determined the trial court ensured that Mr. Moore received all discovery from the prosecutor, indicating Mr. Moore failed to show the prosecutor suppressed any evidence, a necessary element to a viable *Brady* claim. Mr. Moore has not shown this determination to be unreasonable in light of the evidence presented at state court. *See* 28 U.S.C. § 2254(d)(2). The state court reasonably applied the governing principles of *Brady,* and Mr. Moore has not shown that the decision was based on an objectively unreasonable determination of facts in light of the evidence presented in the state court proceedings.

If the District Court determines Mr. Moore did not procedurally default Ground Five, I recommend the District Court **DENY** the claim.

6.      **Ground Six**

In his sixth Ground for Relief, Mr. Moore asserts the trial court erred by imposing consecutive sentences under Ohio Revised Code § 2929.14 without making the required findings and by ordering his sentence to be served consecutively to a future sentence that has not yet been imposed. (ECF #1 at PageID 31).

The Eleventh District considered this issue and remanded the matter to the trial court to resentence Mr. Moore with instructions to "consider imposition of a concurrent or consecutive sentence with regard to known sentences already imposed by other courts, and if the trial court re-imposes consecutive sentences, to make all necessary statutory findings." *Moore,* 2017 WL 3226468, at *9. On remand, the trial court did not order Mr. Moore's eight-year sentence to be served consecutive to any other sentence imposed.

46

Because the Eleventh District ruled in Mr. Moore's favor on this issue, and the trial court remedied the error on remand, Mr. Moore has not presented a federal claim for which relief may be granted on federal habeas review. Therefore, I recommend the district court **DENY** this Ground for Relief.

7.      **Ground Seven**

In his seventh Ground for Relief, Mr. Moore alleges the trial court violated his right against self-incrimination when it imposed a harsher sentence after finding he had no remorse. (ECF #1 at PageID 11). The Eleventh District addressed this issue on direct appeal as follows:

> Appellant argues the trial court violated his right against self-incrimination when it imposed a harsher sentence because it found that appellant showed little or no remorse. In *State v. Moore,* this court considered a similar argument with regard to the trial court's statements concerning remorse and concluded, "[t]he statement indicates the trial court was considering R.C. 2929.12(E)(5)—whether the offender shows genuine remorse for the offense." Similarly, here the trial court was considering the statutory sentencing factor, as it was required to do. Appellant has not established that the trial court imposed a harsher sentence because he chose not to allocute at sentencing.

*Moore,* 2017 WL 3226468, at *10 (citations omitted).

Beyond identifying this as a Ground for Relief in his petition and listing supporting facts, Mr. Moore does not expound on this argument. But the state court record shows Mr. Moore's appellate counsel relied on *Mitchell v. United States,* 526 U.S. 314 (1999), for the proposition that a sentencing court cannot draw negative factual inferences from a defendant's decision to stand silent at sentencing. (ECF #9-1 at PageID 420). To the extent Mr. Moore adopts this line of reasoning in his petition, he has not identified additional federal precedent supporting his argument.

The Fifth Amendment prevents a defendant from being "compelled in any criminal case to be a witness against himself," and protects the defendant's right "to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *Estelle v. Smith*, 451 U.S. 454, 468 (1981). In *Mitchell*, the defendant pled guilty to drug offenses, but did not admit to trafficking a specific amount of narcotics. 526 U.S. at 314. At her sentencing hearing, the government had codefendants testify as to the amount involved (which in turn would determine her mandatory minimum sentence). *Id.* Though her lawyer cross-examined the government's witnesses, the defendant herself did not testify. *Id.* The district court ruled that the defendant could not remain silent about the details of the crime because she pled guilty and noted her failure to testify was a factor in persuading the court to rely on the codefendants' testimony. *Id.*

The Supreme Court held the Fifth Amendment right against self-incrimination prevents a sentencing court from drawing negative inferences from a defendant's silence in determining the facts relating to the circumstances of the crime. *Mitchell*, 526 U.S. at 328. The Court also stated: "Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of [a] downward adjustment . . . is a separate question. It is not before us, and we express no view on it." *Id.* at 330.

Here, at sentencing, Mr. Moore stated as follows:

I just—just feel that, Your Honor, that due to the facts of the case, that I'm going to file for the appeal. I'm just going to let the appellate court work it out, due to the fact that some of the facts of the case didn't quite fit. I'm just gonna roll with it. Your Honor. It's just certain aspects of the case didn't come out.

(ECF #9-2 at PageID 1512-13).

Mr. Moore's case does not align with *Mitchell's* narrow holding because the trial court did not draw negative inferences from his silence on an unproven fact of the crime. Rather, it appears the trial court considered the perceived lack of remorse in Mr. Moore's statement, an appropriate sentencing consideration. *See In re Cook*, 551 F.3d 542, 551 (6th Cir. 2009) (stating that "[d]ue process is not implicated by the consideration of a defendant's lack of remorse as an aggravating factor" and that "a defendant's remorse—or lack thereof—is an appropriate consideration in meting out punishment"). Although federal law restricts a court from increasing a sentence because a defendant exercised the Fifth Amendment right to remain silent, it does not prohibit a sentencing court from considering a defendant's lack of remorse. *Ketchings v. Jackson,* 365 F.3d 509-512-13 (6th Cir. 2004).

"Under [the] AEDPA, if there is no 'clearly established Federal law, as determined by the Supreme Court' that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes,* 397 F.3d 446, 453 (6th Cir. 2005). Mr. Moore has not identified clearly established federal precedent supporting his argument. Therefore, if considered on its merits, I recommend the District Court **DENY** Ground Seven.

### 8.    Ground Eight

In his eighth Ground for Relief, Mr. Moore alleges by imposing court costs and a fine at sentencing, the trial court violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution, related portions of the Ohio Constitution, and provisions of the Ohio Revised Code. (ECF #1 at PageID 11).

Under § 2254, subject matter jurisdiction exists "only for claims that a person 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Dickerson v.*

*United States*, 530 U.S. 428, 439 n.3 (2000) (quoting § 2254(a)). In general, fines or restitution

orders do not satisfy the "in custody" requirement of a cognizable habeas claim. *See Washington v.*

*McQuiggin*, 529 F. App'x 766, 772-73 (6th Cir. 2013) (collecting authority); *see also Kennedy v. Nagy*,

No. 18-1463, 2018 WL 3583212, at *2 (6th Cir. 2018) (holding noncustodial punishments,

including restitution, court costs, and attorney fees, are not cognizable in federal habeas

proceeding because they do not satisfy the "in custody" requirement). Mr. Moore's challenge to the

trial court's imposition of noncustodial punishments is not cognizable on federal habeas review.

Therefore, I recommend the District Court **DENY** Ground Eight as such.

9.     **Ground Nine**

In his ninth Ground for Relief, Mr. Moore alleges he received ineffective assistance of

appellate counsel because appellate counsel failed to raise issues related to the right to receive aid

from standby counsel and speedy trial rights. Mr. Moore also presents a claim that the trial court

denied him the right to appellate counsel. (ECF #1-2 at PageID 79).

The Eleventh District addressed these issues as follows:

App.R. 26(B)(1) provides that "[a] defendant in a criminal case may apply for
reopening of the appeal from the judgment of conviction and sentence, based on a
claim of ineffective assistance of appellate counsel."

An application for reopening must set forth "[o]ne or more assignments of error or
arguments in support of assignments of error that previously were not considered on
the merits in the case by any appellate court or that were considered on an
incomplete record because of appellate counsel's deficient representation[.]" The
application must also contain a sworn statement setting forth the basis of the claim
alleging that appellate counsel's representation was deficient and the manner in
which the deficiency prejudiced the outcome of the appeal. The application "shall be
granted if there is a genuine issue as to whether the applicant was deprived of the
effective assistance of counsel on appeal.

To prevail on an application to reopen, defendant must make "a colorable claim" of
ineffective assistance of appellate counsel under the standard established in *Strickland*

50

*v. Washington.* Under *Strickland,* a defendant must demonstrate that (1) counsel was deficient in failing to raise the issues defendant now presents and (2) defendant had a reasonable probability of success if the issue had been presented on appeal.

In support of his application, appellant raises two arguments he claims were not previously considered in *Moore* due to appellate counsel's alleged deficient representation.

Appellant first argues appellate counsel's representation was deficient because on appeal he failed to raise the issue of ineffective assistance of appellant's standby counsel at trial.

When a defendant waives his right to counsel, he is precluded from asserting a claim of ineffective assistance of counsel.

In *Moore,* we held the appellant knowingly, intelligently, and voluntarily waived his right to counsel, and the trial court complied with Crim.R. 44. Therefore, appellant is precluded from raising a claim of ineffective assistance of trial counsel.

Appellant next argues appellate counsel's representation was ineffective for failing to raise an assignment of error pertaining to appellant's right to a speedy trial. Under this argument, appellant has failed to demonstrate a reasonable probability of success if the argument was raised on appeal.

Moreover, appellant's affidavit does not show how appellate counsel's failure to raise these arguments "prejudicially affected the outcome of his appeal," as required by App.R. 26(B)(2)(d).

(ECF #9-1, PageID 571-73).

### a.    Standby Counsel

In *Adams v. United States ex rel. McCann,* 317 U.S. 269 (1942), the Supreme Court

determined the Sixth Amendment right to the assistance of counsel does not force a lawyer on the

defendant; rather, it implicitly includes "a correlative right to dispense with a lawyer's help." *Id.* at

279. In *Faretta,* the Court held the Sixth Amendment guarantees that a defendant in a criminal

trial has an independent constitutional right of self-representation and that he may proceed to

defend himself without counsel when he voluntarily and intelligently elects to do so. 422 U.S. at

806. And, in *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984), the Court determined the right to self-representation does not require a trial court to permit "hybrid representation" between a defendant and counsel. Under both federal and state jurisprudence, the trial judge has the discretion to appoint standby counsel. *See Faretta*, 422 U.S. at 834 n.46 (citing *United States v. Dougherty*, 473 F.2d 1113, 1124-26 (D.C. Cir. Jun. 30, 1972) ("Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.")); *see also State v. Martin*, 816 N.E.2d 227, 232 (Ohio 2004) ("Once the right to counsel is properly waived, trial courts are permitted to appoint standby counsel to assist the otherwise pro se defendant.").

There is, however, no Supreme Court precedent establishing a defendant's constitutional right to standby counsel. Indeed, numerous courts have held no such right exists. *See Wilson v. Hurt*, 29 F. App'x 324, 327 (6th Cir. 2002) ("While a defendant has a Sixth Amendment right to have counsel conduct his entire defense, or to proceed pro se, he has no constitutional right to demand 'hybrid representation,' such as conducting his own defense with the occasional assistance of counsel.") (citations omitted); *see also Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006) ("The *Faretta* right and the appointment of standby counsel inherently conflict which, taking into account that hybrid representation is not required, supports the conclusion that there is no right to standby counsel."). "Without a constitutional right to standby counsel, a defendant is not entitled to relief for the ineffectiveness of standby counsel." *United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998). To the extent standby counsel fails to act during trial, the defendant merely suffers the consequences of his decision to proceed *pro se*. *Wilson v. Parker*, 515 F.3d 682, 697 (6th

Cir. 2008); *see also Holmes v. United States*, 281 F. App'x 475, 480-81 (6th Cir. 2008) ("Even if standby counsel failed to act in some manner, such failure is an incidental effect of [the petitioner's] decision to assert his *Faretta* rights, and not the basis of an ineffective assistance of counsel claim.").

As explained above, Mr. Moore knowingly and intelligently waived his right to counsel and accepted the trial court's appointment of standby counsel. The court made clear that standby counsel was appointed to assist Mr. Moore with technical questions he may have about procedure, not to get his case ready, file motions, or interview witnesses. (ECF #9-2 at PageID 1192, 1262). Mr. Moore alleges "[t]here is nowhere in the record of Standby Counsel Wexler aiding defendant Moore or protecting defendant [*sic*] civil rights." (ECF #1-2 at PageID 76). Because Mr. Moore does not have a constitutional right to standby counsel, any alleged inaction by standby counsel is not a violation of his constitutional rights. As such, I cannot conclude the Eleventh District unreasonably applied Supreme Court precedent. Thus, I recommend the district court **DENY** the claim as meritless.

Likewise, Mr. Moore's claim the trial court violated his constitutional right to appellate counsel does not entitle him to habeas corpus relief. (*See* ECF #1-2 at PageID 79). The circumstances demonstrate that Mr. Moore's waiver of appellate counsel was knowing and intelligent. First, before sentencing, the court received Mr. Moore's *pro se* Notice of Appeal and agreed to file it on his behalf. (ECF #9-2 at PageID 1511). Immediately after sentencing, Mr. Moore declined the trial court's offer to appoint appellate counsel, stating "I'm going to do it myself, Your Honor," and again requested the court file the Notice of Appeal on his behalf. (ECF #9-2 at PageID 1517). Second, the trial court informed Mr. Moore of his right to appellate counsel

despite his current intention to proceed *pro se* and informed him of the ability to request appointment of counsel later at the Court of Appeals. (*Id.*). And after Mr. Moore encountered issues in self-representation, he requested and received appellate counsel from the Eleventh District. (ECF #9-1 at PageID 407-08).

Even if one concludes the trial court did not adequately advise him of the pitfalls of self-representation at the appellate level, Mr. Moore cannot show he was adversely impacted by the determination because the Eleventh District considered both the assignments of error he alleged before requesting counsel and the assignments of error appellate counsel identified in supplemental briefing. Thus, I recommend the district court also **DENY** the claim as meritless.

> **b.** **Speedy Trial**

Mr. Moore next argues his appellate counsel was ineffective in not raising a speedy trial claim on direct appeal. (ECF #1-2 at PageID 70). Mr. Moore leveled this claim in his first application to reopen the direct appeal. (ECF #9-1 at PageID 536). In response, the State argued Mr. Moore did not show a reasonable probability of success on the issue because no speedy trial violation occurred. (ECF #9-1 at PageID 560-61). The Eleventh District concluded Mr. Moore did not demonstrate a reasonable probability of success on the merits if appellate counsel had raised the issue on appeal but did not elaborate on the court's reasoning. (ECF #9-1 at PageID 573). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington,* 562 U.S. at 99 (2011); *see also Harris v. Reed,* 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is

54

unclear whether a decision appearing to rest on federal grounds was decided on another basis). Thus, I presume the Eleventh District denied relief on the merits of the federal claim.

As noted above, to establish ineffective assistance of counsel under the Sixth Amendment, a petitioner must show his counsel performed deficiently and he suffered prejudice as a result. *Strickland*, 466 U.S. at 687. To show deficiency, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under the then-existing circumstances and as judged by "prevailing professional norms." *Id.* at 687-89. To establish prejudice, a petitioner must prove a "reasonable probability" exists that, but for counsel's errors, the criminal proceedings would have yielded a different outcome. *Id.* at 694. Reasonable probability requires a showing of substantial effect on the outcome of the proceedings, not just "some conceivable" effect. *Id.* at 693. Appellate counsel's failure to raise an issue on appeal can amount to constitutionally ineffective assistance. *McFarland v. Yukins,* 356 F.3d 688, 710 (6th Cir. 2004). But counsel is not obligated to raise every possible claim and "the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment." *Id.* Appellate counsel is not required to raise a non-meritorious claim. *Wilson v. Mitchell,* 498 F.3d 491, 514-15 (6th Cir. 2007).

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. To determine whether a speedy trial violation has occurred, courts consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530 (1972). No one factor is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be

relevant. *Id.* at 533. The constitutional right to a speedy trial permits some delays depending on the circumstances of each case and cannot "be quantified into a specified number of days or months." *Id.* at 521-23. Applying those factors, Mr. Moore's right to a speedy trial was not violated.

*Length of Delay.* The length of delay is measured from the earlier date of indictment or arrest. *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005). Here, Mr. Moore was arrested on October 11, 2013, and was brought to trial on June 1, 2015, a delay of approximately 19 months.

*Reason for the Delay.* The second factor concerns "whether the government or the criminal defendant is more to blame for [the] delay." *Doggett v. United States,* 505 U.S. 647, 651 (1992). The trial court tolled time from December 19, 2013 to January 23, 2014 for the prosecutor to address various motions Mr. Moore filed. (ECF #9-2 at PageID 1166-67, 1171). On January 23, 2014, Mr. Moore agreed to extend the time in which he must be brought to trial for an additional 90 days, thereby tolling time until April 23, 2014. (ECF #9-1 at PageID 176; *see also* ECF #9-1 at PageID 198 (court order tolling speedy trial from March 13 to April 17, 2014 "based on the Defendant's pending motions [which] include a Motion to Suppress)). When Mr. Moore did not appear for a pretrial on April 17, 2014 because he was hospitalized, the trial court tolled time due to his unavailability. (ECF #9-2 at PageID 1254-55; *see also* ECF #9-1 at PageID 199 (tolling speedy trial time for 14 days). The trial court then tolled time for another 14 days after Mr. Moore failed to appear for a May 1, 2014 pre-trial hearing. (ECF #9-1 at PageID 200). Mr. Moore next appeared in court on March 19, 2015. (*Id.* at PageID 1256). The record does not show that any unexcused delay was attributable to the State.

*Defendant's Assertion of Speedy Trial Right.* Mr. Moore asserted his right to speedy trial at least once in a pretrial motion to dismiss. (ECF #9-1 at PageID 194). This motion, however, was not

filed until March 5, 2014, at which point he had already agreed to extend the speedy trial clock to April 23, 2014. And, as noted above, there were multiple further extensions of the speedy trial clock based on Mr. Moore's failures to appear.

     *Prejudice to the Defendant.* The last *Barker* factor "should be assessed in light of the interests of defendants [that] the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. The *Barker* Court identified three such interests: to prevent oppressive pretrial incarceration, minimize anxiety and concern of the accused, and limit the possibility that the defense will be impaired. *Id.* Limiting the possibility that the defense will be impaired is the most serious of the three identified interests. *Id.*

     Any prejudice here is minimal. Mr. Moore cannot claim oppressive pretrial incarceration because even if he had not been detained in this case, he would have been in state custody for a separate felony case pending in Summit County, Ohio. (ECF #9-2 at PageID 1234-36). Any anxiety or concern Mr. Moore experienced for the delay here falls far short of that deemed sufficiently prejudicial in *Barker*, where the defendant waited more than five years from arrest to trial. *Barker*, at 533-34. Finally, there is no evidence supporting a claim that the delay impaired his defense, such as the death of a witness or other unavailability owing to the delay. *See id.* at 534.

     In sum, the *Barker* factors do not support a violation of the Sixth Amendment right to speedy trial. Because counsel is not ineffective for not bringing a non-meritorious claim, the Eleventh District's adjudication is not an unreasonable application of Supreme Court precedent. Based on the foregoing, I recommend the District Court **DENY** this claim.

     **10.**    **Ground Ten**

In his final Ground for Relief, Mr. Moore asserts his second appellate counsel was ineffective for not raising claims that (1) the prosecuting attorney withheld discovery favorable to the defense; (2) law enforcement officers tampered with evidence and made false police reports and statements about the methods used to collect DNA; and (3) a state witness offered perjured testimony.

Mr. Moore's second appellate counsel was appointed for purposes of representing him on direct appeal from the trial court's decision rendered at his May 31, 2018, resentencing hearing. (ECF #9-2 at PageID 1531-32). After the Eleventh District found Mr. Moore's assignments of error related to his resentencing meritless (*see* ECF #9-1 at PageID 715-19), Mr. Moore filed a second application to reopen the direct appeal and pursued the subclaims raised in this tenth Ground for Relief. The Eleventh District concluded as follows:

> The scope of an appeal from a new sentencing hearing is limited to issues that arise at the new sentencing hearing.
>
> . . .
>
> All of appellant's assignments of error directly attack his original conviction, which was affirmed on appeal with regard to all assignments presented other than supplemental assignment 1, in *Moore, supra,* 2017 WL 3226468. None of the issues raised in the matter sub judice are within the scope of the resentencing hearing and subsequent appeal whereby appellant was sentenced to eight years for the Burglary conviction and ordered to pay $1,000.00 in restitution, as well as court costs, with no consecutive sentencing ordered.
>
> Therefore, we conclude appellant has failed to demonstrate that appellate counsel was deficient in failing to raise the issues appellant now presents because they are outside the scope of what appellate counsel was able to present on appeal of the sentencing order in the present matter.
>
> Appellant's application for reopening is denied.

(ECF #9-1 at PageID 801, 803).

The Eleventh District refused to reach the merits of the claims underlying Mr. Moore's ineffective assistance of appellate counsel claims because the claims directly attack his original conviction. As such, they were outside the scope of the resentencing hearing and appellate counsel cannot be deficient for not raising issues outside the scope of the appeal. The Eleventh District's adjudication is not an unreasonable application of the precedent established in *Strickland*. Indeed, the Sixth Circuit has declined to issue a certificate of appealability on a similar procedural pattern where the petitioner claimed ineffective assistance of appellate counsel for counsel's failure to raise claims not related to his resentencing, stating: "[C]ounsel's performance cannot be deficient for failing to raise issues unrelated to the proceeding, which was solely focused on providing reasons on the record for running some of the sentences consecutively." *Barker v. Robinson*, No. 19-4032, 2020 WL 8184915, at *2 (6th Cir. 2020). Therefore, if considered on its merits, I recommend the District Court **DENY** Mr. Moore's tenth Ground for Relief.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner

shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Moore has not made a substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether any of the ten grounds for relief are valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court **DENY** Mr. Moore a certificate of appealability with respect to any ground for relief.

CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I recommend Mr. Moore's habeas petition be **DISMISSED** in its entirety. If any of the grounds are considered on their merits, I recommend the District Court **DENY** habeas relief. I also recommend the District Court **DENY** a Certificate of Appealability for all grounds for relief. Finally, I recommend the District Court **DENY** Mr. Moore's request for a hearing because all grounds for relief can be adjudicated based on the State Court Record.

Dated: July 7, 2023

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).